**Opinion issued October 10, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00422-CV

## NO. 01-13-00423-CV

———————————

**G.H., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the Probate Court**
**Galveston County, Texas**
**Trial Court Case Nos. MH-4237 & MH-4237A**

---

## MEMORANDUM OPINION

G.H. appeals from an order for temporary inpatient mental health services

(No. 01–13–00422–CV) and an order to administer psychoactive medication (No.

01–13–00423–CV).[1]   In each appeal, G.H. challenges the legal and factual sufficiency of the evidence to support the order.

We affirm in each appeal.

## Background Summary

G.H., a 64-year-old woman, suffers from bipolar and schizoaffective disorders.  G.H. functions well when she takes her psychiatric medication. However, G.H has a history of refusing to take her medication, resulting in her repeated hospitalization.  Since 1990, G.H. has been admitted 15 times to the psychiatric program of Mainland Medical Center ("MMC").

On January 28, 2013, G.H. was admitted to MMC, where she remained hospitalized for 22 days.  Experiencing visual and auditory hallucinations, G.H. was again admitted to MMC on May 1, 2013.  G.H. was brought to the hospital's emergency room for a psychiatric evaluation.  When she arrived at the hospital, G.H. was covered with feces.  In the emergency room, G.H. became increasingly agitated, screaming at the staff.  Testing revealed that her potassium level was dangerously low, putting her at risk for a heart attack.  G.H. was admitted to the medical unit of MMC due to her low potassium.

---

[1]   The 90-day period for which the trial court ordered G.H. to receive inpatient services and psychoactive medication has expired.  The Supreme Court of Texas has held that the expiration of the period stated in these orders does not render an appeal of such order moot. *See State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010); *J.M. v. State*, 178 S.W.3d 185, 189 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

On May 2, 2013, an application for emergency detention was signed by a peace officer and filed with the trial court. In the application, the officer wrote that G.H. was "threatening to kill [hospital] staff and others," was paranoid, and was "refusing meds." To support the application, Dr. Lee Emory wrote a statement of preliminary examination in which she stated that G.H. "has been . . . belligerent," was "not taking her meds," and "has threatened to kill staff." The doctor also stated that G.H. "needs to go to [Austin State Hospital]."

An application for court-ordered temporary inpatient mental health services was also filed with the trial court. It sought to have G.H. committed for temporary inpatient treatment. Dr. Emory signed a certificate of medical examination to support the application. Dr. Emory stated in the certificate that G.H. had been diagnosed with bipolar and schizoaffective disorders. Tracking the three statutory criteria necessary to support court-ordered inpatient mental health services, Dr. Emory indicated in the certificate that G.H. was

(1) likely to cause serious harm to herself;

(2) likely to cause serious harm to others; and

(3) suffering severe and abnormal mental, emotional, or physical distress; was experiencing substantial mental or physical deterioration of her ability to function independently, which was exhibited by her inability . . . to provide for her basic needs, including food, clothing, health, or safety . . . and [was] unable to make a rational and informed decision as to whether or not to submit to treatment.

3

Dr. Emory also identified the factual bases of her opinion. In this regard, she stated that G.H. had threatened to kill the hospital staff; had accused the staff of abusing and sexually assaulting her; and had risked her health by refusing medication and treatment for her low potassium level. Dr. Emory also filed an application for an order to administer psychoactive medication, requesting the trial court to authorize the administration of medication to G.H.

The trial court ordered the continued detention of G.H. at MMC pending the involuntary-commitment hearing. The trial court also appointed Dr. Emory and Dr. Altaf Loya to examine G.H.

The trial court conducted the temporary commitment hearing on May 8, 2013. Among the State's witnesses were Dr. Loya, two nurses who had cared for G.H. at MMC, and G.H.'s daughter. G.H. testified in her own defense.

At the conclusion of the commitment hearing, the trial court determined that the evidence satisfied the statutory requirements for court-ordered inpatient mental health services. In its order, the trial court stated that the allegations in the application for commitment were "true and correct," supported by clear and convincing evidence that G.H. is mentally ill. The trial court also found that clear and convincing evidence showed, as a result of G.H.'s mental illness, she was likely to cause serious harm to herself and likely to cause serious harm to others. The trial court further found that G.H. was "suffering severe and abnormal mental,

4

emotional, or physical distress," was "experiencing substantial mental or physical deterioration of her ability to function independently, which [was] exhibited by [G.H.'s] inability, except for reasons of indigence, to provide for her basic needs, including food, clothing, health, or safety," and was "unable to make a rational and informed decision as to whether or not to submit to treatment." The trial court ordered G.H. committed to Austin State Hospital for a period not to exceed 90 days.

Immediately following the commitment hearing, the trial court conducted a hearing on the application to administer psychoactive medication. Dr. Loya again testified for the State. G.H. did not testify in her own defense. At the conclusion of the hearing, the court signed an order to administer psychoactive medication, providing that the medications could be administered to G.H. during her 90-day temporary inpatient commitment.

G.H. appeals both orders.

## Sufficiency Challenges

In one issue, G.H. challenges the legal and factual sufficiency of the evidence to support the commitment order and to support the order to administer psychoactive medication.

5

## A. Standards of Review

To obtain either an order for temporary commitment or an order to administer psychoactive medication, the State must prove its case by clear and convincing evidence. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (Vernon 2010), § 574.106(a-1) (Vernon 2010). In this context, "clear and convincing evidence" means "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979).

Because the State's burden of proof is clear and convincing evidence, we apply a heightened standard of review to sufficiency-of-the-evidence challenges. *See In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). When reviewing the legal sufficiency of the evidence in a case requiring proof by clear and convincing evidence, we determine whether the evidence is such that a factfinder could reasonably form a "firm belief or conviction as to the truth of the allegations sought to be established." *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010) (*K.E.W. I*) (quoting *Addington*, 588 S.W.2d at 570). We examine all evidence in the light most favorable to the finding, assuming that the "factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex.2002). We disregard all contrary evidence unless a

reasonable factfinder could not have done so. *K.E.W. I*, 315 S.W.3d at 20 (citing *In re J.F.C.*, 96 S.W.3d at 266).

Likewise, the higher burden of proof alters the appellate standard of factual-sufficiency review. *C.H.*, 89 S.W.3d at 25-26. In reviewing the evidence for factual sufficiency under the clear and convincing standard, we inquire "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *See id*. at 25. We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266; *K.E.W. v. State*, 333 S.W.3d 850, 855 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (remanded from the Supreme Court of Texas) (*K.E.W. II*). In so doing, we must give "due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *See In re J.F.C.,* 96 S.W.3d at 266. We examine the entire record to determine whether "the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction"; if it is, the evidence is factually insufficient. *In re J.F.C.*, 96 S.W.3d at 266; *K.E.W. II*, 333 S.W.3d at 855.

**B.     Statutory Requirements for Temporary Commitment**

Health and Safety Code subsection 574.034(a) provides that the judge may order a proposed patient to receive court-ordered temporary inpatient mental health services only if the judge or jury finds, from clear and convincing evidence, that:

(1)     the proposed patient is mentally ill; and

(2)     as a result of that mental illness the proposed patient:

>    (A)    is likely to cause serious harm to himself;
>
>    (B)    is likely to cause serious harm to others; or
>
>    (C)    is:
>
>    >    (i)     suffering severe and abnormal mental, emotional, or physical distress;
>    >
>    >    (ii)    experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and
>    >
>    >    (iii)   unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.034(a).

Subsection 574.034(c) requires that, if the judge or a jury finds that the proposed patient meets the commitment criteria prescribed by subsection (a), the judge or the jury must specify which criterion listed in subsection (a)(2) forms the

8

basis for that decision. *Id.* § 574.034(c). The Health and Safety Code further requires that, to be clear and convincing under subsection 574.034(a), the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm:

> (1) the likelihood of serious harm to the proposed patient or others; or

> (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function.

*Id.* § 574.034(d).

The Supreme Court of Texas has concluded that the term "overt act," found in subsection 574.034(d), is not limited to physical conduct but may be any action objectively perceivable, including verbal statements. *K.E.W. I*, 315 S.W.3d at 22. More specifically, the court determined that "a proposed patient's words are overt acts within the meaning of Section 574.034(d)." *Id.* A proposed patient's statements "can be relevant both to determining whether he is mentally ill and also to predicting what actions he might or will take in the future as a result of mental illness." *Id.* The statute permits "the law's intervention to prevent serious injury to others" when a person with a mental illness makes statements that foreshadow violence. *Id.*

The statutory language does not require evidence of a recent overt act that, by itself, proves the likelihood a proposed patient will cause serious harm to others.

9

*Id.* at 23. Rather, the statute requires evidence of an overt act that "tends to confirm" the "likelihood" of serious harm to others. *Id.* at 23 (citing TEX. HEALTH & SAFETY CODE ANN. § 574.034(d)(1)). "[A] recent overt act by a proposed patient 'tends to confirm' that the patient poses a likelihood of serious harm to others within the meaning of Section 573.034(d) if the overt act is to some degree probative of a finding that serious harm is probable. . . ." *K.E.W. I*, 315 S.W.3d at 24. This is true even though the overt act itself may not be dangerous. *Id.* The court determined that the statutory language is sufficiently broad to allow commitment regardless of whether the person's threat actually causes physical harm. *See id.* at 22. The court summarized the State's burden of proof as follows:

> [T]he statute requires evidence of a recent act by the proposed patient, either physical or verbal, that can be objectively perceived and that is to some degree probative of a finding that serious harm to others is probable if the person is not treated. The overt act itself need not be of such character that it alone would support a finding of probable serious harm to others.

*Id.* at 24.

Here, the trial court indicated that it based the commitment order on all three statutory criteria listed in subsection (a)(2), including the criterion that G.H. was likely to cause serious harm to others. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2).

G.H. does not dispute the trial court's finding that she is mentally ill. Instead, she challenges the legal and factual sufficiency of the evidence to support

10

the trial court's three subsection (a)(2) findings supporting commitment. Her appeal includes a challenge to the trial court's determination that G.H. was likely to cause serious harm to others if not committed for temporary inpatient treatment. *Id.* § 574.034(a)(2)(B). In this regard, G.H. contends that the State offered insufficient evidence of a recent overt act tending to confirm the likelihood that she would cause serious harm to others if not treated. *Id.* § 574.034(d).

## C.     Legal Sufficiency of Evidence to Support Commitment Order

We first turn to the record to determine whether legally-sufficient evidence showed "a recent overt act" that tends to confirm the likelihood that G.H. would cause serious harm to others. To support the commitment order, the State offered the expert testimony of board certified psychiatrist, Dr. Atlaf Loya. Dr. Loya testified that his opinion testimony was based on his personal knowledge of G.H. and her medical records. During her most recent admission to MMC, Dr. Loya saw G.H. as a consulting physician and stated that he had also conducted a psychiatric evaluation of G.H. In addition, Dr. Loya had been G.H.'s attending physician during her previous admission to MMC.

Dr. Loya testified that, when she was most recently brought to the emergency room, G.H. was "increasingly agitated, and screaming, yelling at the ER staff." He stated that it was difficult for him to evaluate G.H. in the hospital because she was in an acute psychotic phase, had "pressured speech," would not

11

listen to him, and would not stop talking. According to Dr. Loya, interrupting G.H. resulted in her becoming "verbally aggressive and belligerent."

When asked whether G.H. is likely to cause harm to others as a result of her mental illness, Dr. Loya responded affirmatively. He supported his response by stating, "[S]he tends to get very aggressive, threatening and she has made verbalized threats to the staff and other people, many other people."

Dr. Loya also testified that G.H. had been "very threatening" to home health care workers to the extent that they have become "scared" of her. Because of this, "several home health care companies are not willing to work with her."

G.H. contends that Dr. Loya's testimony does not adequately "substantiate a cognizable threat to others" because it does not identify the specific behaviors on which his opinion is based. G.H. does not, however, acknowledge that Dr. Loya identified the "detailed basis" for his opinion in a "Physician's Certificate of Medical Examination for Mental Illness." The certificate, which Dr. Loya signed under oath, was admitted into evidence at the commitment hearing. In the certificate, Dr. Loya stated that G.H. had threatened to kill the hospital staff. He identified that as a basis for his opinion. This evidence, coupled with Dr. Loya's testimony regarding G.H.'s threatening, aggressive, and belligerent behaviors toward hospital staff and home health care workers, provides a basis for Dr. Loya's

12

testimony that G.H. is likely to cause serious harm to others. *See K.E.W. I*, 315 S.W.3d at 22.

In addition Dr. Loya's testimony, the State offered the testimony of S. Broom, the nursing supervisor at MMC. He stated that, during G.H.'s most recent admission, he had been called by the nursing staff on the medical unit to assist with G.H. because she was "out of control and threatening." Broom testified that, when he arrived at her room, G.H. "was screaming, hollering, threatening to kill people." Broom stated that the charge nurse informed him that G.H. had threatened to kill all the staff on the unit, including Dr. Loya. Broom testified that the nursing staff ultimately had to obtain an emergency order from Dr. Loya to give G.H. a shot of medication "just to calm her down, because she was so out of control and threatening." Broom further testified that he was concerned that G.H. would hurt the medical staff because, during her previous admission, she injured a nurse by stabbing the nurse with a pencil.

G.H. contends that the evidence of her threats to kill the staff "does not identify any overt act in which [she] hurt anyone at MMC during this admission or in the recent past." However, as discussed, the supreme court has made clear that "overt act," found in subsection 574.034(d), is not limited to physical conduct but may be any action objectively perceivable, including verbal statements foreshadowing violence. *See id.* G.H.'s propensity and ability to actually injure

13

someone was shown by Broom's testimony that G.H. had stabbed a nurse with a pencil during her last admission three months earlier.

G.H.'s daughter, Annette, also testified for the State. According to Annette, G.H. has been "becoming more aggressive with me, to the point that she acts like she's going to throw things at me." The daughter stated, "She hasn't physically thrown things at me but she has thrown things at some of the home health care workers." For example, Annette stated that G.H. had thrown a walker at one of the workers.

G.H. intimates that her daughter's testimony does not indicate a recent overt act because Annette did not testify when G.H. had thrown the walker at the health care worker. However, when read in the context of her statement that G.H. has been becoming more and more aggressive, Annette's testimony indicates that the events of which she testified had recently occurred and that G.H.'s threatening behaviors were escalating.

To support commitment, the State must present evidence of a recent act by the proposed patient, either physical or verbal, that can be objectively perceived, and that is to some degree probative of a finding that serious harm to others is probable if the person is not treated. *See id.* at 24. Here, the evidence of G.H.'s verbal threats to kill the hospital staff and her physical acts of throwing objects at home health care workers are such acts.

14

We conclude that the State introduced legally sufficient evidence to prove an overt act by G.H. that tended to confirm the likelihood of serious harm to others; that is, considering the evidence as we must, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that it was probable that G.H. was likely to cause serious harm to others if not treated. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(B); *see also id.* § 574.034(d). Accordingly, we hold that the evidence is legally sufficient to support the trial court's order for temporary inpatient mental health services.

**D.      Factual Sufficiency of Evidence to Support Commitment Order**

In addressing G.H.'s factual sufficiency complaint, we give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *See C.H.*, 89 S.W.3d at 25. G.H. cites nursing supervisor Broom's testimony, given during cross-examination, that he did not believe G.H. would hurt anyone if released from the hospital. Broom testified that he held this belief because G.H. "tends to stay at home by herself."

As discussed, evidence was also presented that G.H. had been aggressive and threatening to her daughter and to home health care workers. Broom's testimony that he did not believe G.H. was a threat to others if released from the hospital is not so significant that the trial court, as factfinder, could not have reasonably resolved any discrepancies in the evidence in favor of its finding. *See*

15

*In re J.F.C.*, 96 S.W.3d at 266. In other words, Broom's testimony is not so significant that a reasonable trier of fact could not have reconciled this evidence in favor of its finding and formed a firm belief or conviction that G.H. was likely to cause serious harm to others. *See id.*; *K.E.W. II*, 333 S.W.3d at 855. Accordingly, we hold that the evidence is factually sufficient to support the trial court's order for temporary inpatient mental health services.[2]

We overrule G.H.'s sole issue challenging the legal and factual sufficiency of the evidence to support the order for temporary commitment in appellate cause number 01-13-00422-CV.

**E.      Sufficiency of Evidence Supporting Medication Order**

An order authorizing the administration of psychoactive medication may be entered only if the patient is under a valid order for temporary or extended mental health services. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a)(1) (Vernon 2010). G.H.'s appellate challenge to the trial court's order to administer psychoactive medication appears to be that, because the trial court's order for involuntary commitment is not supported by sufficient evidence, there is no underlying predicate commitment order authorizing the medication order. *See id.*

---

[2] Because we have held that the evidence is legally and factually sufficient to support temporary inpatient commitment pursuant to subsection 574.034(a)(2)(B), we need not address the sufficiency of the evidence to support the trial court's other two subsection 574.034(a)(2) findings supporting commitment. *See* TEX. R. APP. P. 47.1.

Because we have concluded that the trial court's order of involuntary commitment is supported by legally and factually sufficient evidence, we overrule G.H.'s sole issue in her appeal of the order to administer psychoactive medication. *See E.V.A. v. State*, Nos. 01-05-00871-CV, 01-05-00872-CV, 2005 WL 3497716, at *6 (Tex. App.—Houston [1st Dist.] Dec. 22, 2005, no pet.) (mem. op.) (affirming order to administer psychoactive medication when only argument offered challenging order was that evidence was insufficient to support commitment order).

We overrule G.H.'s sole issue challenging the order authorizing the administration of psychoactive medication in appellate cause number 01-13-00423-CV.

## Conclusion

We affirm the trial court's order for temporary inpatient mental health services (No. 01–13–00422–CV) and its order to administer psychoactive medication (No. 01–13–00423–CV).

Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Massengale.